PTSI, INC., Appellant

v.

Cole HALEY, Anthony Piroli and Evolution Sports Institute LLC, a PA Limited Liability Company, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.
Filed May 24, 2013.

Paul D. Steinman, Pittsburgh, for appellant.

Joseph J. Bosick, Pittsburgh, for appellees.

BEFORE: SHOGAN, ALLEN and WECHT, JJ.

OPINION BY SHOGAN, J.:

Appellant, PTSI, Inc. ("PTSI"), appeals from the order granting summary judgment in favor of Appellees Cole Haley ("Haley"), Anthony Piroli ("Piroli"), and Evolution Sports Institute LLC ("ESI"). For the reasons that follow, we affirm.

PTSI provides sports training to professional and youth athletes under the trade name Power Train Sports Institute. Haley and Piroli are both certified personal trainers. Haley worked for PTSI as its Director of Operations for the Pittsburgh market. Piroli worked for PTSI as a personal trainer. Both men worked at PTSI's facility in Wexford, Pennsylvania. They were both at-will employees and not subject to non-compete, nondisclosure, or non-solicitation agreements.

Sometime before March 2011 and while still employed by PTSI, Haley and Piroli decided to open their own sports training facility. To that end and before they resigned from PTSI on April 29, 2011, Haley and Piroli incorporated ESI, leased a location in Bridgeville, Pennsylvania as of May

2, 2011, and informed PTSI clients that they were starting their own business.

In response to the creation of ESI, PTSI filed a multi-count action against Haley, Piroli, and ESI, averring, *inter alia*, conversion, breach of duty of loyalty, and breach of fiduciary duty of loyalty. During the course of discovery, PTSI requested sanctions for the personal defendants' alleged spoliation of evidence, *i.e.*, the deletion of electronic files. Following an extended discovery period, PTSI and the defendants filed separate motions for summary judgment. The trial court denied PTSI's motion and granted the defendants' motion. PTSI appealed. PTSI and the trial court have complied with Pennsylvania Rule of Appellate Procedure ("Pa. R.A.P.") 1925.

On appeal, PTSI presents the following issues: [1]

A. Whether the trial court erred in dismissing PTSI's breach of duty of loyalty claim.

B. Whether the trial court erred in dismissing PTSI's breach of fiduciary duty claim.

C. Whether the trial court erred in dismissing PTSI's conversion claim.

D. Whether the court erred in denying PTSI's motion for sanctions after violation of court order to preserve evidence by completely erasing critical electronic records.

PTSI's Brief at 21, 25, 26, and 29 (full capitalization omitted).

PTSI challenges the entry of summary judgment in favor of Haley, Piroli, and ESI, which resulted in the dismissal of its claims. The following standards govern our review of the trial court's order:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Capek v. Devito* [564 Pa. 267], 767 A.2d 1047, 1048, n. 1 (Pa.2001). As with all questions of law, our review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof.... establishes the entitlement of the moving party to judgment as a matter of law." *Young v. Penn. DOT*, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 615 A.2d 303, 304 (1992).

*Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001).

---

1. We note with disapproval that PTSI's brief does not comply with Pa.R.A.P. 2119(a) in that its argument section is not "divided into as many parts as there are questions to be argued." PTSI's Statement of Questions Presented includes eight questions, but its argument section contains four headings with multiple subheadings. To aid our review, we have rephrased PTSI's issues using the headings that introduce its argument sections.

PTSI first challenges the dismissal of its breach of duty of loyalty claim against Haley and Piroli. According to PTSI, "[u]nder Pennsylvania law, Haley and Piroli owed PTSI a duty of undivided loyalty while employed by PTSI." PTSI's Brief at 21 (citing *Basile v. H. & R. Block, Inc.*, 563 Pa. 359, 761 A.2d 1115 (2000)). Specifically, PTSI claims that Haley and Piroli breached their duty of loyalty by improperly soliciting PTSI's clients while still employed by PTSI. *Id.* at 21–22. PTSI bases its solicitation claim on the following assertions:

> Nearly all of ESI's initial clientele were former PTSI clients. Further, Haley and Piroli took affirmative steps prior to their April 29, 2011 resignation date to develop closer relationships with PTSI clients by deviating from PTSI's policy of rotating clients and personal trainers and instead provided exclusive training services to certain PTSI clients. Prior to leaving PTSI, Haley and Piroli scheduled appointments for PTSI's clients at ESI for the week of its start-up. Finally, on their April 29, 2011 resignation date, Haley and Piroli took the only copies of more than 40 client training files, depriving PTSI of the information in those files.

PTSI's Brief at 22 (citations omitted); *see also* PTSI's Reply Brief at 1–6 (regarding breach of duty of loyalty claim). By concluding that "the above evidence demonstrating solicitation by Haley and Piroli of PTSI's clients while still employed by PTSI was merely . . . speculation and conjecture," PTSI continues, the trial court "improperly supplanted the jury as factfinder." PTSI's Brief at 22.

The Pennsylvania Supreme Court has addressed the solicitation of customers by an employee who seeks to compete with his former employer as follows:

> The rule is quite clear that the solicitation of customers and use of customers lists is permissible unless there is a breach of an express contract or violation of some confidence. *There must be some element of fraud or trade secrecy involved* [.] [*Wiegand Co. v. Harold E. Trent Co.*, 122 F.2d 920, 924 (3rd Cir. 1941).]

> \* \* \*

> Even before the termination of the agency he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete[.] [Restatement (2d) of Agency, § 393 comment e.]

> Nor is the fact that the new company may acquire some of the plaintiff's former customers contrary to law. It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or in association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis that some of those customers will want to continue to deal with him in his new association. This is so natural, logical and part of human fellowship, that an employer who fears this kind of future competition must protect himself by a preventive contract with his employee, unless, of course, there develops a confidential relationship which of itself speaks for nondisclosure and noncompetition in the event the employer and employee separate.

*Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 359, 363–364, 162 A.2d 370, 372–373, 375

(1960) (emphasis in original; internal quotation marks omitted). *See also Gilbert v. Otterson,* 379 Pa.Super. 481, 550 A.2d 550 (1988) (quoting rule affirmed in *Spring Steels* ), *appeal denied,* 522 Pa. 596, 562 A.2d 320 (1989); *Colteryahn Dairy, Inc. v. Schneider Dairy,* 415 Pa. 276, 280, 203 A.2d 469, 471 (1964) ("Generally, in the absence of an express contract to the contrary, solicitation of a former employer's customers, on behalf of another in competition with his former employer, will not be enjoined.").

Applying the rationales of *Spring Steels* and *Gilbert,* the trial court concluded that no genuine issue of material fact existed as to Haley's and Piroli's alleged solicitation of PTSI's customers:

> Mr. Saunders [2] admitted that each of the clients was an "at will" client with no contractual obligation to continue to train with PTSI. Mr. Saunders further stated that the clients were obviously free to train with their teams and not with PTSI. Mr. Saunders admitted that the clients were free to train at Evolution Sports facility, as long as not impermissibly solicited by Haley or Piroli while still employed by PTSI.

In *Spring Steels,* the Supreme Court of Pennsylvania emphasized:

> "The rule is quite clear that the solicitation of customers and use of customers lists is permissible unless there is a breach of an express contract or violation of some confidence. ***There must be some element of fraud or trade secrecy involved . . .[""]***

*Spring Steels,* 162 A.2d at 372–373. (emphasis by Supreme Court). Here, no element of fraud or trade secrecy is invoked simply by the individual Defendants planning to go into business for themselves and preparing to compete prior to terminating their employment with PTSI. [Haley's and Piroli's] conduct of advising clients of their intention to open a new training facility was done with proper motives and to advance legitimate business interests. *See Thompson Coal Co. v. Pike Coal Co.* [488 Pa. 198], 412 A.2d 466, 471 (Pa. 1979) (affirming grant of summary judgment in favor of defendant, including a claim for breach of fiduciary duty, where plaintiff failed to establish a prima facie case or a genuine issue of material fact to prove defendant's alleged unlawful intent where defendant acted to advance its own legitimate interests). PTSI has not offered sufficient evidence that could prove that [Haley's and Piroli's] conduct was other than proper, justified and reasonable under the circumstances.

In order to establish its claims for breach of a duty of loyalty or breach of fiduciary duty, PTSI must show that [Haley and Piroli] unlawfully solicited its clients while still employed by PTSI. PTSI contends that [Haley and Piroli] somehow breached a duty of loyalty by soliciting its clients before they left PTSI by relying upon certain testimony of former PTSI clients. However, the record provides no support for [PTSI's] contention that there was such solicitation. In fact, when asked whether PTSI had any evidence to support the claim that clients had been solicited while employed by PTSI, Mr. Saunders admitted that he was not aware of any former client who stated that he or she was solicited.

To bolster its allegation of unlawful solicitation, PTSI noted that soon after

---

**2.** Steven Saunders is the President and CEO of PTSI. N.T. (Saunders Deposition), 11/17/11, at 6.

[Haley and Piroli] resigned from PTSI, some athletes, who had been clients of PTSI, began training with ESI. The case law, however, is clear that an employee may make preparations to compete and schedule appointments for a new business prior to termination of employment. *New L & N Sales and Marketing v. Menaged,* 1998 WL 575270, at *7 (E.D.Pa. Sept. 9, 1998).

[PTSI] relies on an undated document that stated, "We have roughly 45 student and 10 NFL confirmations that they will train at ESI." [PTSI] contends that such evidence of "confirmations" from unnamed persons demonstrates that [Haley and Piroli] unlawfully solicited PTSI's clients while still employed by PTSI. Under Pennsylvania law, a jury cannot be allowed to reach a verdict merely on the basis of speculation or conjecture. *Young,* 744 A.2d at 1277. Here, however, PTSI must base its solicitation contention upon speculation and conjecture that these confirmations were received from clients of PTSI that would certainly become clients of ESI. The mere reference to "confirmations" from unnamed persons does not provide evidence that they were the result of unlawful solicitation as opposed to a decision of the athlete upon the simple announcement that his trainer was moving. Trial Court Opinion, 7/31/12, at 16–18 (footnotes omitted).

█ Upon reviewing the record in the light most favorable to PTSI, we conclude that PTSI is not entitled to relief. Steven Saunders admitted that he did not talk to any former clients who claimed they were solicited. N.T. (Saunders Deposition), 11/17/11, at 69. Even if Haley and Piroli did contact PTSI's clients while still employed by PTSI, PTSI presents no evidence that Haley and Piroli did so improperly. For example, text messages at-tached to PTSI's motion for summary judgment demonstrate that Piroli was circumspect and cautious in dealing with clients just days before resigning from PTSI. *See* Motion for Summary Judgment, 1/20/12, at Exhibit H (Excerpts from Deposition of Dillon Buechel and text messages).

Moreover, Haley and Piroli did not breach an express contract or violate some confidence. *Spring Steels,* 400 Pa. at 359, 162 A.2d at 372–373. Additionally, Haley and Piroli were not subject to a restrictive covenant, *i.e.,* a non-compete, a non-disclosure, or a non-solicitation agreement, which could have been enforced to prevent them from competing with PTSI. Their right to compete included the right to divert customers from PTSI. *Gilbert,* 550 A.2d at 555. Furthermore, PTSI did not identify an element of fraud or trade secrecy as being involved in this case. *Id.* PTSI did not present evidence that its customer list was a trade secret, *i.e.,* the product of special work on the part of PTSI, or that Haley and Piroli misappropriated customer names and addresses in violation of a confidential relationship or an express contract. *Spring Steels,* 400 Pa. at 359, 162 A.2d at 373.

Notably, PTSI makes the assumption that, because its former clients began training the week ESI opened, Haley and Piroli improperly solicited those clients. However, Steven Saunders acknowledged that his clients were not under contract and, therefore, were free to train elsewhere. N.T. (Saunders Deposition), 11/17/11, at 86–88. Indeed, PTSI's witness, Dillon Buechel, testified that he and his fellow Montour High School teammates decided amongst themselves to leave PTSI of their own volition and for their own reasons. N.T. (Buechel Deposition), 11/8/11, at 39. Dominic Martinelli, also of Montour High School, testified to leaving

PTSI of his own volition and for his own reasons. N.T. (Martinelli Deposition), 11/8/11, at 32, 35–36, 45–47.

In sum, absent substantiating evidence, PTSI's repeated assertions that Haley and Piroli improperly solicited PTSI customers do not make the underlying claim true. PTSI has failed to satisfy its burden of adducing sufficient evidence of solicitation to establish its breach of loyalty claim. Therefore, Haley and Piroli were entitled to judgment as a matter of law. *See Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1144 (Pa.Super.2001) ("If the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law."). Consequently, we conclude that the trial court did not abuse its discretion or commit an error of law in granting summary judgment in favor of Haley and Piroli on PTSI's breach of duty of loyalty claim.

Next, PTSI challenges the dismissal of its breach of fiduciary duty claim against Haley. PTSI's Brief at 25. PTSI asserts: "As the most senior manager at PTSI's Wexford facility, Haley breached his fiduciary duty to PTSI by soliciting PTSI's clients and removing approximately 40 of PTSI's client training files prior to his departure[.]" *Id.* at 26.

We have addressed "fiduciary duty" as follows:

A confidential relationship between two parties can give rise to fiduciary duties owed by one to the other.

\* \* \*

[T]he essence of [a confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other. Accordingly, [a confidential relationship] appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, *or*, on the other, weakness, dependence or trust, justifiably reposed[.]

[T]he party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 218 (Pa.Super.2012) (quoting *Basile v. H & R Block, Inc.*, 777 A.2d 95, 102 (Pa.Super.2001)) (brackets in original; internal quotation marks and citations omitted).

PTSI argues that, because Haley was the most senior manager at PTSI's Wexford facility, "charged with the management and oversight of that location's day-to-day operations," he owed a fiduciary duty to PTSI. PTSI's Brief at 26 (citing *Franklin Music Co. v. American Broadcasting Companies, Inc.*, 616 F.2d 528 (3rd Cir.1979)); Reply Brief at 6 (citing *Byrd v. Johnston*, 2009 WL 1515746, unreported (E.D.Pa.2009)). The trial court rejected PTSI's arguments:

[T]his Court has found no published case law which holds that [an] employee owes fiduciary duty to his or her employer simply by virtue of being employed as a manager without showing that employee has committed some fraudulent, unfair or wrongful act in the course of employment.

\* \* \*

[PTSI] asserts that Mr. Haley was the director of operations of the Power Train Wexford facility, and, therefore, was subject to a fiduciary duty. The case that [PTSI] cites, *Franklin Music Co. v. ABC, Inc.*, provides no support for

its claim for breach of fiduciary duty. To the contrary, in that case, the Court concluded: "In granting defendants' motion for judgment notwithstanding the verdict on interrogatory 4, the trial court started with the generally recognized rule that an employer is not free to restrict the post employment activities of his at-will employees, or to prevent them, while employed, from looking for other employment." *Franklin Music Co. v. ABC, Inc.*, 616 F.2d 528, 544 (3rd Cir.1979), (*see also United Aircraft Corp. v. Boreen*, 284 F.Supp. 428, 442 (E.D.Pa.1968), aff'd, 413 F.2d 694 (3rd Cir.1969), *Spring Steels*, 162 A.2d at 374–75.)

Trial Court Opinion, 7/31/12, at 14, 19–20.

■ Upon review of the record in the light most favorable to PTSI, we conclude that PTSI is not entitled to relief. As discussed above, even if Haley contacted PTSI's clients while still employed by PTSI, PTSI presented no evidence that the parties dealt on unequal terms, *i.e.*, that there was an overmastering influence on the one side, or, on the other side, weakness, dependence or trust, justifiably reposed. *Weiley*, 51 A.3d at 218. Nor did PTSI present evidence that Haley breached an express contract or violated some confidence. *Spring Steels*, 400 Pa. at 359, 162 A.2d at 372–373. Haley was not subject to a restrictive covenant, *i.e.*, a non-compete, a nondisclosure, or a non-solicitation agreement, which could have been enforced to prevent him from competing with PTSI. His right to compete included the right to divert customers from PTSI. *Gilbert*, 550 A.2d at 555. Furthermore, PTSI did not identify an element of fraud or trade secrecy as being involved in this case. *Id.* PTSI did not present evidence that its customer list was a trade secret, *i.e.*, the product of special work on the part of PTSI, or that Haley misappropriated

customer names and addresses in violation of a confidential relationship or an express contract. *Spring Steels*, 400 Pa. at 359, 162 A.2d at 373.

Moreover, contrary to PTSI's argument, Haley's status as manager of the Wexford facility or director of the Pittsburgh operations does not necessarily subject him to a fiduciary duty. Pennsylvania law generally imposes that duty on officers and directors. *Accord Lutherland, Inc. v. Dahlen*, 357 Pa. 143, 151, 53 A.2d 143, 147 (1947) ("[O]fficers and directors are deemed to stand in a fiduciary relation to the corporation. They must devote themselves to the corporate affairs with a view to promote the common interests and not their own, and they cannot, either directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders."). *See also Franklin Music Co.*, 616 F.2d at 533 ("[A]s an officer and director of FMC, Franklin was bound by the strictest duties of honesty and individual loyalty, and could not engage in business conduct detrimental to FMC's best interests.").

In sum, PTSI has failed to satisfy its burden of adducing sufficient evidence of solicitation to establish its breach of fiduciary duty claim. Therefore, Haley was entitled to judgment as a matter of law. Consequently, we conclude that the trial court did not abuse its discretion or commit an error of law in granting summary judgment in favor of Haley on PTSI's breach of fiduciary duty claim. *Grandelli*, 777 A.2d at 1144.

PTSI's third issue challenges the dismissal of its conversion claim. According to PTSI, Haley and Piroli "improperly removed the only existing copy of the client training files from PTSI's possession without PTSI's consent, refused to return them for over three weeks, during which time

the paper client files taken from PTSI were used to 'work out clients' at ESI." PTSI's Brief at 26. Conversely, the trial court concluded there was no genuine issue of material fact regarding PTSI's conversion claim:

[N]o evidence has been submitted which could bring this case within the tort of conversion. Conversion is properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel, which justify requiring the defendant to pay its full value. *See* Comment c to Restatement (Second) of Torts § 222A. (1965).

\* \* \*

Since there are no trade secrets involved in this case, as conceded by PTSI on appeal, the cases cited by PTSI to support its claims for conversion are not applicable. *See e.g. Computer Print Systems, Inc. v. Lewis* [281 Pa.Super. 240], 422 A.2d 148, 155 (Pa.Super.1980) (viable conversion claim existed because computer programs were determined by the court to be trade secrets—suggesting that when there are no trade secrets involved, once demand is made and the items are returned, it would be inequitable to impose liability).

On appeal, PTSI concedes, as it must, that the Power Train strength program workout spreadsheets are not trade secrets. The workout sheets show the type of training and exercises that the particular clients received. However, the record is clear that PTSI made no attempt to keep the Power Train strength program workout information a secret or from becoming publicly known. ... Mr. Saunders conceded that he has received no certification in resistance training as the individual defendants. He also admitted that Haley and Piroli, as the certified personal trainers, would

write up the workout sheet routines and take the clients through the workout sessions. In addition, Mr. Saunders admitted that the workout sheets were given out to clients and that the clients were free to give the sheets to anyone they chose.

Also, the workout sheets had no actual economic value to anyone. The clients' workout sheets were of no use to PTSI once the clients decided to stop using the services of PTSI. The workout sheets themselves indicate that the clients' exercises, weights and repetitions changed each session and, thus, soon became outdated. In fact, Montour High School student Dominic Martinelli testified that the personal training he did with ESI was, from the start, quite different from the training he did with PTSI. No evidence suggests that [Haley and Piroli] needed to rely on the workout sheets for any purpose.

Moreover, a demand and refusal is an essential element of [PTSI's] claim for conversion. *Norriton [E. Realty Corp. v. Cent.–Penn Nat. Bank,* 435 Pa. 57, 254 A.2d 637], at 639 [ (Pa.1969) ]. [PTSI's] claim for conversion cannot stand because the allegedly converted items were returned shortly after a demand to return was made. [Haley and Piroli's] possession and control of the items was temporary and quickly abated soon after they were served with the Complaint on May 24, 2011. The letters sent by PTSI demanding the return of its property prior to filing suit and the filing of PTSI's Motion for Writ of Seizure were sufficient to meet the "demand and return" requirement for a conversion claim. Here, there was no refusal to return or denied access to the alleged client list or workout sheets. Furthermore, there is already a judicial admission in the record that Defendants

promptly returned the workout sheets to [PTSI], without removing or copying the contents, once a demand to return them was made. At a status conference held before this Court within two days of filing [PTSI's] Motion for Writ of Seizure for the return of the client workout information, [PTSI's] former counsel consented to the entry of the Order dismissing the writ of seizure as moot, without any admission or finding of wrongdoing, based upon the affidavit and agreement of the parties. (Consent Order dated May 26, 2011).

Trial Court Opinion, 7/31/12, at 11, 12–14 (footnotes omitted).

■■■ Pursuant to Pennsylvania case law, a conversion is widely understood as "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa.Super.2000) (quoting *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964)). A person may incur liability for conversion by "[u]nreasonably **withholding** possession from one who has the right to it." *Martin v. National Sur. Corp.*, 437 Pa. 159, 165, 262 A.2d 672, 675 (1970) (emphasis supplied).

Pursuant to the Restatement (2d) of Torts:

(1) Conversion is an intentional exercise of dominion or control over a chattel which **so seriously interferes** with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

Restatement (2d) of Torts § 222A (1965) (emphasis supplied).

In conversion the measure of damages is the full value of the chattel, at the time and place of the tort. When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale. **Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.**

*Id.* at comment c (emphasis supplied).

Not only the conduct of the defendant, but also its consequences, are to be taken into account. In each case the question to be asked is whether the actor has exercised such dominion and control over the chattel, and has **so seriously interfered** with the other's right to control it, that in justice he should be required to buy the chattel.

*Id.* at comment d (emphasis supplied).

■ Upon review of the record in the light most favorable to PTSI, we conclude that PTSI is not entitled to relief. Haley and Piroli admitted to taking certain client worksheets. Answer, 9/23/11, at ¶¶ 37–38; New Matter, 9/23/11, at ¶ 1. PTSI demand-

ed return of the client worksheets on May 12, 2011. Letter, 5/12/11. Haley and Piroli returned them two weeks later, on May 26, 2011. Affidavit, 5/26/11. According to Steven Saunders, the worksheet form was an Excel spreadsheet created by PTSI, but the contents were developed by the individual trainers for each specific client. N.T. (Saunders Deposition), 11/17/11, at 10–11. Mr. Saunders acknowledged the public nature of the worksheets and the lack of proprietary information related to the worksheets and training results. *Id.* at 136, 139, 140. Notably, as the trial court observed:

> Mr. Saunders himself submitted a magazine article on fitness that included a modified version of the workout plan for James Harrison, a Pittsburgh Steeler football player. Indeed, PTSI's own promotional materials detailed the methods and design of training programs reflected by the workout sheets. PTSI's principal, Mr. Saunders admitted that the information concerning training results is not proprietary. . . . In addition, Mr. Saunders admitted that the workout sheets were given out to clients and that the clients were free to give the sheets to anyone they chose.

Trial Court Opinion, 7/31/12, at 13 (citing N.T. (Saunders Deposition), 11/17/11, at 136, 139, Exhibits 5 and 6) (footnotes omitted).

Based on the facts of record, PTSI has failed to adduce sufficient evidence that Haley and Piroli unreasonably withheld the workout sheets from PTSI or so seriously interfered with PTSI's right to control the worksheets as to establish a conversion. *Martin,* 437 Pa. at 165, 262 A.2d at 675; Restatement (2d) of Torts § 222A. Therefore, Haley and Piroli were entitled to judgment as a matter of law. Consequently, we conclude that the trial court did not abuse its discretion or commit an error of law in granting summary judgment in favor of Haley and Piroli on PTSI's conversion claim.

Finally, we address PTSI's challenge to the dismissal of its claim for sanctions based on Haley's and Piroli's alleged spoliation of evidence. PTSI's Brief at 29. PTSI argues that Haley and Piroli violated the trial court's May 26, 2011 preservation order by intentionally deleting text messages and electronic records from their phones and/or computers, which contained information "that is vital to the prosecution of this case, and that cannot be feasibly reconstructed or retrieved without enormous time and expense to PTSI, if at all." Motion for Sanctions, 9/27/11, at 3. Applying Pennsylvania's Rules of Civil Procedure governing electronically stored information, the trial court found that the level of importance and complexity of the issues did not weigh in favor of imposing sanctions and that the deleted material was not relevant or important to its decision. Trial Court Opinion, 7/31/12, at 8–10.

 We review the disposition of a motion for spoliation sanctions pursuant to the following standards:

> "Spoliation of evidence" is the nonpreservation or significant alteration of evidence for pending or future litigation. When a party to a suit has been charged with spoliating evidence in that suit (sometimes called "first-party spoliation"), we have allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator. *See Schroeder v. Commonwealth, Department of Transportation,* 551 Pa. 243, 710 A.2d 23, 27 (1998).

*Pyeritz v. Commonwealth of Pennsylvania,* 613 Pa. 80, 88–89, 32 A.3d 687, 692 (2011) (footnotes and citation omitted).

> [Spoliation] sanctions arise out of "the common sense observation that a party who has notice that evidence is relevant

to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the evidence." *Mount Olivet [Tabernacle Church v. Edwin L. Wiegand Division ]*, 781 A.2d [1263], at 1269 (Pa.Super.2001) (quoting *Nation—Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir.1982)).

\* · \* \*

■■■■ To determine the appropriate sanction for spoliation, the trial court must weigh three factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Mount Olivet,* 781 A.2d at 1269–70 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)). In this context, evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. *See Mt. Olivet,* 781 A.2d at 1270. The duty prong, in turn, is established where: "(1) the plaintiff knows that litigation against the defendants is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants." *Id.* at 1270–71.

*Creazzo v. Medtronic, Inc.,* 903 A.2d 24, 29 (Pa.Super.2006) (original brackets omitted).

The 2012 Explanatory Comment preceding Pa.R.C.P. 4009.1, effective August 1, 2012, provides, in relevant part, as follows:

> As with all other discovery, electronically stored information is governed by a **proportionality standard** in order that discovery obligations are consistent with the just, speedy and inexpensive determination and resolution of litigation disputes. The proportionality standard requires the court, within the framework of the purpose of discovery of giving each party the opportunity to prepare its case, to consider: (i) the nature and scope of the litigation, including the importance and complexity of the issues and the amounts at stake; (ii) the relevance of electronically stored information and its importance to the court's adjudication in the given case; (iii) the cost, burden and delay that may be imposed on the parties to deal with electronically stored information; (iv) the ease of producing electronically stored information and whether substantially similar information is available with less burden; and (v) any other factors relevant under the circumstances.

Pa.R.C.P.2012 Explanatory Comment— Electronically Stored Information, *B. Proportionality Standard* (emphasis supplied).

Here, the trial court rendered its analysis using the proportionality standard:

> In Pennsylvania, as with all discovery, the discovery of electronically stored information (ediscovery) is governed by a proportionality standard, which this Court has followed.[3]

_____

3. The **Explanatory Comment—Electronically Stored Information** to the Amendments of Rules 4009.1, 4009.11, 4009.12, 4009.21, 4009.23, and 4011 of the Pennsylvania Rules of Civil Procedure, which becomes effective August 1, 2012, restates the proportionality standard that this Court applied in the context of discovery of electronically stored in-

formation at issue to the circumstances of this case.

■ To begin, we consider the nature and scope of the litigation, including the importance and complexity of the issues and the amounts at stake. This legal dispute was brought by a large established multi-location personal fitness training business attempting to derail a small start-up competing business. We find that the amounts at stake involved [sic] are relatively minor and that the level of importance and complexity of the issues concerning the electronically stored information do not weigh in favor of granting any discovery sanction.

Furthermore, this trial Court never concluded, as [PTSI] complains on appeal, that [PTSI] is not entitled to a spoliation inference or other sanction simply because [PTSI] cannot now specifically show the content that [Haley and Piroli] destroyed. People regularly delete electronically stored information and other things every day that are not evidence relevant to pending or foreseeable litigation even though the content cannot be specifically shown. The doctrine of spoliation only applies to the improper intentional destruction of evidence that could be relevant to the case. Here, there has been no showing that the innocent clean up of personal electronic devices to allow them to function was unusual, unreasonable or improper under the circumstances.

The record is clear that both [Haley and Piroli] routinely deleted text messages, often on a daily basis, so as not to unduly encumber their iPhones.[4] Because of the volume of text messages that are frequently exchanged by cell phone users and the limited amount of storage on cell phones, it would be very difficult, if not impossible, to save all text messages and to continue to use the phone for messaging. Pennsylvania's

Rule of Civil Procedure 4011 bars discovery that causes "unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party." Pa. R. Civ. P. 4011. *See also The Sedona Conference, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (2005)* (Sedona Principle 5 provides that "[t]he obligation to preserve electronic data and documents requires reasonable and good faith efforts ... [but] it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant data."). The cost, burden and difficulty of producing all electronically stored information was a factor that weighed in favor of the decision to deny the Motion for Sanctions.

---

4. Tr. of Deposition of Piroli at pp. 60–61; Tr. of Haley at pp. 44–45.

Next, this Court considered the relevance of the electronically stored information and its importance to the Court's adjudication. The record shows that [Haley and Piroli] could not have destroyed any evidence related to the subject matter of the Amended Complaint. The record reflects that the alleged unlawful conduct or plan of [Haley and Piroli] as pled in the Amended Complaint was allegedly executed by [Haley and Piroli] while they were employed at PTSI. Therefore, the only potentially relevant information that would relate to the allegations of [Haley's and Piroli's] alleged misconduct would have been created while they were employed by PTSI. Since Haley's and Piroli's employment with PTSI ended on April 29, 2011, any text messages or e-mails that were sent or received by them in furtherance of an alleged unlawful plan could not have occurred after that date. This Court's

order requiring the preservation of electronic evidence was not issued until May 26, 2011, about a month after the last of any "documentary and/or electronic evidence related to the subject matter of the Complaint" would have been created. The adverse spoliation inference need not have been drawn concerning e-mails and text messages that could not possibly be relevant to the claims at issue. Therefore, by the time this Court's May 26, 2011 Preservation Order went into effect, the spoliation of any potentially relevant electronically stored information dated prior thereto had already occurred. The electronically stored information at issue was not the center of importance to the Court's adjudication.

Additionally, substantially similar information was available from other ediscovery custodians and other sources with less burden and difficulty. The record reveals that during the course of ediscovery there were more than one thousand (1,000) emails exhumed from [Haley's and Piroli's] computers by the forensic examiner, which were carefully reviewed by [defense] counsel for detection of any relevant evidence. Most of the e-mails were determined by counsel to be either purely personal, privileged, or not relevant to this lawsuit. Moreover, upon turning over the Piroli e-mails to [PTSI's] counsel, [defense] counsel justifiably complained that [PTSI] was engaging in a "fishing-expedition" which had risen to the level of "burdensome, expensive and time-con-

suming discovery which serves no legitimate purpose." [5]

5. *See* Exhibit B to Defendants' Response to Motion for Sanctions.

Finally, even if PTSI was entitled to a spoliation inference, that inference would not defeat Defendants' Motion for Summary Judgment. The evidence of record coupled with an adverse spoliation inference would not have been sufficient to create a genuine issue of material fact as to any of the three remaining counts at issue. Electronically stored information is not at the center of importance to this Court's adjudication. Considering all of the factors related to this case under a proportionality standard, this Court properly decided that PTSI was not entitled to a spoliation inference or other discovery sanction. Trial Court Opinion, 7/31/12, at 8–11.[3]

Upon review, we conclude that PTSI is not entitled to relief. Electronically stored information most relevant to PTSI's claims would have been created on or before April 29, 2011. However, at that time, although Haley and Piroli were still employed by PTSI, litigation was not pending or foreseeable, and the protective order was not in effect. We note that Haley and Piroli also deleted electronically stored information created after the May 26, 2011 protective order. However, regarding the deletion of electronic files both before and after the protective order, the trial court believed that Haley's and Piroli's conduct was routine and not motivated by bad faith, that they deleted only non-

3. We are also aware of Sedona Principle 14, which provides as follows:

Sanctions, including spoliation findings, should only be considered by the court if, upon a showing of a clear duty to preserve, the court finds that there was an intentional or reckless failure to preserve and produce relevant electronic data and that there is a

reasonable probability that the loss of the evidence has materially prejudiced the adverse party.

The Sedona Conference, *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* (2005). As discussed below, PTSI did not make such a showing in the case at hand.

relevant electronically stored information and turned over all relevant electronically stored information. Moreover, the trial court observed that PTSI did, in fact, acquire some of Haley's and Piroli's electronically stored information. Given our deferential standard of review, we may not substitute our judgment for that of the trial court. *See Botsford v. Dugan,* 758 A.2d 667, 668 (Pa.Super.2000) ("[I]t is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the factfinder."). Accordingly, we discern no abuse of discretion in the denial of PTSI's motion for sanctions.

Order affirmed.

WECHT, J., files a Concurring Opinion.

CONCURRING OPINION BY WECHT, J.:

I join the learned majority's opinion in full. I write separately to note just how close I believe the case to be. What gives me pause is the troubling breadth of Cole Haley's and Anthony Piroli's ("Appellees") at best irresponsible, at worst intentional, and in any event admitted, destruction of certain evidence undisputedly encompassed by the trial court's May 26, 2011 preservation order. In my view, the trial court opinion downplays Appellees' mis- or malfeasance. I believe the topic deserved greater attention from the trial court and warrants more attention from this panel.

Regarding the trial court's ruling on summary judgment, I find no legal error or abuse of discretion in the trial court's determination that PTSI, Inc.'s ("Appellant") proffered evidence in opposition to Appellees' motion for summary judgment failed to establish a genuine issue of material fact. While Appellant's claims in this case might be established by circumstantial evidence alone, *see Porter v. Joy Real-*

ty, Inc., 872 A.2d 846, 850 (Pa.Super.2005), that does not mean that any modicum of suggestive evidence will suffice to establish a basis to proceed to trial.

As argued by Appellant, Appellees' business plan and appointment records certainly would be consistent with Appellees' improper solicitation of Appellant's clients to take their business to Appellees' new venture. However, Appellant named no fewer than fifty-five of its former clients who left Appellant to train with Appellees at their new facility, yet proffered no evidence whatsoever, in the form of affidavit or sworn deposition testimony, that any one of these former clients had been solicited by Appellees, as required to establish a *prima facie* case. *See* Maj. Op. at 310–11. While it might have been unduly burdensome for Appellant to depose each of these individuals, Appellant could have conducted, and might well have done so, a less formal preliminary investigation to identify at least one current or former client who had been improperly encouraged by either of Appellees to leave Appellant to train with Appellees. However, Appellant failed to provide any indication to the trial court that it had done so, despite lengthy and thorough discovery.

This omission is especially troubling inasmuch as nothing in Pennsylvania law suggests that an individual preparing to depart one's employment is barred, absent contractual obligation, from informing clients of that departure and of the place where that individual intends to continue doing business. As noted by the trial court, by the majority, and by prior Pennsylvania cases, there are certain client-oriented employments that tend to breed individual loyalty. *See, e.g., Spring Steels, Inc., v. Molloy,* 400 Pa. 354, 162 A.2d 370, 375 (1960) ("[I]t is inevitable ... where [a] former employee has dealt with customers

on a personal basis that some of those customers will want to continue to deal with him in his new association."); *accord Renee Beauty Salons, Inc., v. Blose–Venable*, 438 Pa.Super. 601, 652 A.2d 1345 (1995). Speaking generally, it is not the law's place to interfere with free commerce of this sort.

That being said, I confess a degree of sympathy for Appellant's objection to the trial court's stated basis for declining to impose sanctions against Appellees for spoliation of evidence. I find it difficult to understand how the trial court reached what I infer is its conclusion that no spoliation occurred. Appellant provides sufficient evidence to suggest that Appellees violated the trial court's preservation order of May 26, 2011, with regard to their "smartphones," their personal and/or business computer(s), as well as their internet-based e-mail accounts. Brief for Appellant at 31–32; Plaintiff's Supplemental Brief, Exh. A (citing Declaration of W. Scott Ardisson, certified forensic computer examiner, at 2–3, in which Ardisson avers that investigation revealed deletion of text messages not only from individual Appellees' smartphones, but also of computer back-ups of text messages up to the date they surrendered phones for examination); Brief in Support of Motion for Sanctions, 9/28/2011, Exh. D, Deposition of Anthony Piroli, 8/3/2011, at 25–26, 47–52 (Appellee Piroli attesting that, after surrendering files of his own selection on a portable electronic medium, he erased same files from computer despite knowledge of preservation order, and that he was unaware of any steps taken by him or Appellee Haley to guard against unintentional destruction, modification, or alteration of electronic documents or evidence, as specified by preservation order). The trial court acknowledged only Appellant's spoliation allegations as to the smartphones and the e-mail accounts:

> The record is clear that both individual [Appellees] routinely deleted text messages, often on a daily basis, so as not to unduly encumber their iPhones. Because of the volume of text messages that are frequently exchanged by cell phone users and the limited amount of storage on cell phones, it would be very difficult, if not impossible, to save all text messages and to continue to use the phone for messaging.

Trial Court Opinion ("T.C.O."), 7/31/2012, at 9 (footnote citing deposition testimony of Appellees omitted). The trial court simply is silent regarding Appellee Piroli's admission that, in violation of the import of that court's preservation order, he arranged for the "cleaning up" of his computer, a matter of considerably greater concern, in my opinion, than the deletion of text messages.

With regard to the remaining information, *i.e.*, that stored in Appellees' email accounts, the trial court found as follows:

> [Appellees] could not have destroyed any evidence related to the subject matter of the Amended Complaint. The record reflects that the alleged unlawful conduct or plan of [Appellees] as [pleaded] in the Amended Complaint was allegedly executed by [Appellees] while they were employed at PTSI. Therefore, the only potentially relevant information that would relate to the allegations of the individual [Appellees'] alleged misconduct would have been created while they were employed by PTSI. Since [Appellees'] employment with PTSI ended on April 29, 2011, any text messages or e-mails that were sent or received by them in furtherance of an alleged unlawful plan could not have occurred after that date. This Court's Order requiring the preservation of electronic evidence was not issued until May 26, 2011, about

a month after the last of any "documentary and/or electronic evidence related to the subject matter of the Complaint" would have been created. The adverse spoliation inference need not have been drawn concerning e-mails and text messages that could not possibly be relevant to the claims at issue. Therefore, by the time [the trial court's] May 26, 2011 Preservation Order went into effect, the spoliation of any potentially relevant electronically stored information dated prior thereto had already occurred.

T.C.O. at 9–10.

The trial court's explanation appears necessarily to entail two questionable propositions: (1) that any post-May 26 act of spoliation could not have affected electronic files pre-dating Appellees' resignations from PTSI; and (2) that Appellees could not have created any files, or transmitted or received any e-mails or text messages, after their resignations from PTSI and the beginning of ESI's operations that would suggest that they had engaged in improper solicitation of PTSI clients. I believe that the inaccuracy of these propositions is self-evident. There is nothing in the record to suggest that Appellees' undisputed post-May 26 deletion of text messages, e-mails, and computer files affected only files created after their PTSI resignations; that only pre-resignation files could have any bearing upon Appellant's claims; or that such destruction could have concerned only files with no bearing on the solicitation inquiry. Indeed, setting aside the text messages, the record suggests the contrary proposition: that Appellees deleted both computer files and e-mails pre-dating their resignations (unless it was Appellees' mutual practice to clean their computers of all data on a more or less monthly basis, a proposition as counterintuitive as it is unsupported by any evidence of record).[1]

The trial court also found that "substantially similar information was available from other [electronic discovery] custodians and other sources with less burden and difficulty." T.C.O. at 10. In support of this observation, the trial court noted that Appellant's forensic examiner "exhumed" and reviewed more than 1,000 e-mails from the computers he reviewed. *Id.* The trial court observed that Appellees' counsel "justifiably complained" that Appellant was engaging in a fishing expedition. While fishing expeditions certainly are disfavored, *Land v. State Farm Mut. Ins. Co.*, 410 Pa.Super. 579, 600 A.2d 605, 608 (1991) (citing *In re Thompson's Estate*, 416 Pa. 249, 206 A.2d 21 (1965)), I cannot credit the trial court's observations regarding the relative burden and difficulty involved in reviewing spoliated evidence, had it been available to Appellant. At its own expense, Appellant "mirrored" the devices at issue, and Appellant's expert bore the burden of reviewing Appellees' internet-based e-mail accounts—again, at Appellant's expense. If Appellant was willing to shoulder the burden and expense, I fail to see how those aspects of discovery would militate against imposing a sanction for acts that interfered with such discovery.

Finally, the trial court minimized the relevance of Appellant's motion for sanctions to the larger case as follows:

1. With regard to the deletion of text messages, in evaluating Appellant's motion for sanctions, the trial court was called upon to reconcile competing evidence, and we will not disturb the trial court's finding of fact absent a lack of substantial evidence or an abuse of discretion. *Christian v. Penna. Fin'l Responsibility Assigned Claims Plan,* 454 Pa.Super. 512, 686 A.2d 1, 5 (1996) (defining an abuse of discretion as "manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous"); *see generally Cove Centre, Inc. v. Westhafer Constr., Inc.,* 965 A.2d 259 (Pa.Super.2009) (requiring remand for trial court fact-finding to resolve allegations of discovery sanctions).

[E]ven if [Appellant] was entitled to a spoliation inference, that inference would not defeat [Appellees'] Motion for Summary Judgment. The evidence of record coupled with an adverse spoliation inference would not have been sufficient to create a genuine issue of material fact as to any of the . . . counts at issue. Electronically stored information is not at the center of importance to [the trial court's] adjudication. Considering all of the factors related to this case under a proportionality standard, [the trial court] properly decided that [Appellant] was not entitled to a spoliation inference or other discovery sanction.

T.C.O. at 11.

In light of the undeniable suggestiveness of Appellant's circumstantial evidence, had the trial court determined that an adverse inference was due, but granted summary judgment on the basis set forth above, I would be inclined to reverse. Unlike the trial court, I believe the spoliation admitted by Appellees might well have involved damning information predating Appellees' resignations from PTSI that, in turn, might have established an evidentiary basis upon which a jury could conclude that Appellees improperly solicited Appellant's clients to move with them to ESI. Were a sufficient number of jurors to draw such an inference, upon a proper instruction, they might reasonably conclude based upon circumstantial evidence that Appellees were liable for one or more of the counts asserted.

However, when a party spoliates evidence in violation of a court order it lies in the trial court's discretion to determine the degree of fault and a proportionate sanction. *Cove Centre*, 965 A.2d at 261. Thus, we could reverse the trial court's ruling on spoliation only if we find that the court has abused its discretion. *See Christian, supra* n.1. While the trial court indicated its

belief that a jury could not reasonably enter a verdict in favor of Appellant even given an adverse inference, a proposition with which I disagree, I read its other bases for denying that sanction to be independent of this debatable premise, and sufficient in their own right to demonstrate a sustainable exercise of the trial court's discretion. Specifically, as noted *supra*, Appellant's failure to present testimonial or other evidence militating in favor of the inference that Appellees improperly solicited Appellant's clients, despite lengthy discovery, suggests that its discovery efforts in this regard did amount to a fishing expedition.

Accordingly, I join the majority in finding that the trial court did not abuse its discretion in declining to impose a sanction for the spoliation of evidence at issue. *See Cove Centre*, 965 A.2d at 263 (noting that deeming requested admissions to be admitted and entering judgment against the sanctioned party is the greatest available sanction, and reversing the trial court's entry of same as an abuse of discretion). Absent an adverse inference instruction, or a punitive sanction to similar effect, the trial court's summary judgment ruling must be considered solely on the evidence proffered, which was developed after extensive discovery. For the foregoing reasons, and subject to the reservations expressed above, I find no error of law or abuse of discretion in the trial court's ruling granting Appellees' motion for summary judgment. Accordingly, I concur in the majority's opinion.