J-A02041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WHITESAND RESEARCH, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PATRICK F. SEHN, AN INDIVIDUAL, AND STEADY STATE MEDIA, LLC, A LIMITED LIABILITY COMPANY, | |
| Appellees | No. 1123 WDA 2017 |

Appeal from the Order entered July 6, 2017,
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): GD-17-001786.

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JUNE 07, 2018**

WhiteSand Research, LLC, appeals from the trial court's order sustaining Patrick Sehn and Steady State's preliminary objections and dismissing the complaint against them.  Concluding that WhiteSand alleged sufficient facts in its amended complaint to establish most of the claims against Patrick Sehn and Steady State, we affirm in part and reverse in part and reinstate several claims.

The well-plead facts averred in the amended complaint, which we must accept as true, are as follows:

WhiteSand is a limited liability company in the business of selling and marketing investment research reports to brokerage firms, conducting

investment research, providing consulting services and performing executive searches and recruiting. WhiteSand's predecessor, Global Marketing Partners, was engaged in these same business activities.

Stephanie Sehn, Patrick Sehn's wife, started working for Global Marketing Partners in 2003. In 2010, she became a member of Global. To do so, she was required to sign a non-disclosure agreement (NDA). Upon the merger of WhiteSand and Global, Stephanie continued as a member of WhiteSand, owning a 12.5 percent interest, and served as the chief sales person. WhiteSand succeeded to the rights under the NDA Stephanie had signed with Global. Pursuant to this contract, Stephanie agreed that she would hold certain information confidential including, in particular, potential transactions, business opportunities and customer lists and information. Failure to do so would result in harm to WhiteSand and entitle it to monetary damages and other remedies.

While working for WhiteSand, Stephanie travelled to New York City and other cities. Stephanie told David McMullin Jr., WhiteSand's manager and majority member, that these trips were for marketing and selling WhiteSand's research; WhiteSand paid for this travel, including airplane flights. On average, Stephanie brought in $287,000 in revenues annually. However, in the year preceding Stephanie's resignation, her sales plummeted to $7,500. Stephanie told McMullin that her lack of sales was because big investment

banks were providing free research, so no one wanted to pay for it. She also told him that the type of research offered by WhiteSand was not in demand.

Unbeknownst to WhiteSand, and while working for WhiteSand, Stephanie also worked for Steady State, a company solely owned by her husband, Patrick. She did so on WhiteSand's time and at its expense. Moreover, she used WhiteSand's computer and cell phone, among other resources, as did Patrick, to conduct Steady State's business and for their own personal benefit and that of Steady State. Steady State accepted Stephanie's work knowing that she was diverting WhiteSand's time and resources for its own benefit.

Late in November 2015, McMullin decided to expand WhiteSand's business to provide executive searches for financial firms and other businesses. WhiteSand hired a professional in this field to teach Stephanie how to set up an executive search business for WhiteSand. In the months thereafter, when McMullin inquired as to the status of the executive search program, Stephanie told him that it was still in the developmental stage and not yet operational. Stephanie asked for extra compensation to run this part of the business, but McMullin refused.

After thirteen years at the company, Stephanie terminated her employment with WhiteSand on February 24, 2016. McMullin told Stephanie to return the computer and any other personal property of WhiteSand in her possession. She did not return the computer until over a week later and did

not return any of the other confidential information she had received during her membership with WhiteSand and Global. During that week, Stephanie and Patrick erased from the computer much of the business information on it. They also used special software to ensure that normal recovery of erased or deleted material could not be done. WhiteSand had to employ a forensics engineer to recover most of the lost data. During these recovery efforts, it was discovered that Stephanie had been operating an executive search business for herself, while she reported to McMullin it was not operational. Additionally, Stephanie had been using WhiteSand's resources to operate her own business of selling investment research. This recovery also showed that Patrick had used the computer for his benefit and Steady State's. He had been helping Stephanie with her investment research operation and the executive search business.

After leaving WhiteSand, Stephanie formed Block House, which like WhiteSand, markets, sells and provides consulting services for investment research. Block House also conducts executive searches.

Stephanie's actions have depleted the assets of WhiteSand and severely affected the continuing viability of WhiteSand. Moreover, as a result of the Appellees' actions, the value of WhiteSand has been greatly reduced.

Based upon these facts, WhiteSand and David McMullin Jr. filed suit against Stephanie Sehn, Patrick Sehn, Block House and Steady State. In the amended complaint, WhiteSand and McMullin asserted the following claims:

Count I - Fraud as to Stephanie, Patrick and Block House;

Count II - Breach of Contract as to only Stephanie;

Count III - Tortious Interference with the Non-Disclosure Agreement as to Patrick;

Count IV - Unjust Enrichment as to all Defendants;

Count V - Conversion as to all Defendants;

Count VI - Interference with Contractual Relations of WhiteSand's clients as to all Defendants; and

Count VII - Injunctive Relief.

Appellees filed preliminary objections, raising several arguments including an objection in the nature of a demurrer on all counts as to all Appellees. With respect to Patrick and Steady State, in particular, Appellees contend that WhiteSand asserted no facts regarding the actions or representations of these parties which would form a basis for the claims asserted against them. Rather, they argue, these claims are derived solely from the conduct and actions of Stephanie in conjunction with WhiteSand's claims of conspiracy.[1]

By Order dated July 6, 2017, the trial court overruled the preliminary objections as to Stephanie and Block House, but sustained the preliminary objections as to Patrick and Steady State. The trial court denied WhiteSand's motion for reconsideration. The trial court provided no detailed explanation

---

[1] WhiteSand does not set forth a separate count for conspiracy. However, WhiteSand's allegations that a conspiracy existed between Stephanie and Patrick, coupled with allegations of tortious conduct, form the basis for a claim of conspiracy as discussed *infra.*

for its decision in either of these orders or its 1925(a) Opinion of September 5, 2017, only stating that "[Appellant has] failed to plead legally sustainable causes of action against Defendants, Patrick Sehn or Steady State Media."

The original plaintiffs, WhiteSand and David McMullin Jr., discontinued the case without prejudice, as to Stephanie and Block House on July 31, 2017, making the case against Patrick and Steady State ripe for appeal. This timely appeal followed.[2]

WhiteSand raises the following issues on appeal:

1. Did [WhiteSand] state a cause of action for fraud against [Patrick]?

2. Did [WhiteSand] state a cause of action for tortious interference with contractual relations against [Patrick and Steady State] for interfering with the non-disclosure agreement between Stephanie and [WhiteSand]?

3. Did [WhiteSand] state a cause of action for tortious interference with contractual relations against [Patrick] for interfering with the sales agreements for investment research between [WhiteSand] and its customers?

4. Did [WhiteSand] state a cause of action for unjust enrichment against [Patrick and Steady State]?

5. Did [WhiteSand] state a cause of action for conversion against [Patrick and Steady State]?

WhiteSand's Brief at 4.

_____

[2] Prior to the filing of the Notice of Appeal, David McMullin Jr. withdrew as a plaintiff from the case.

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections in the nature of a *demurrer* are as follows:

> Our review of a trial court's sustaining of preliminary objections in the nature of a *demurrer* is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error law or an abuse of discretion. All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the *demurrer* is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa. Super. 2008) (internal citations and quotations omitted).

We, therefore, must examine closely the allegations contained in the amended complaint in the context of each cause of action. A careful review of the allegations shows that WhiteSand has pled sufficient substantive facts to establish several causes of action, contrary to Appellees' position and the trial court's order.

Preliminarily, we note that WhiteSand's claims against Patrick are in large part premised upon the existence of an alleged conspiracy between Patrick and Stephanie; this conspiracy is important to the success of

WhiteSand's claims.[3] Specifically, WhiteSand argues that although Patrick did not directly engage in certain conduct, a cause of action may nonetheless be asserted against him because the conduct was taken in furtherance of the conspiracy. WhiteSand, however, has not specifically asserted a separate cause of action for conspiracy. We will first consider the impact of WhiteSand's conspiracy allegation upon this case.

The Pennsylvania Supreme Court set forth the elements of civil conspiracy in **Thompson Coal Co. v. Pike Coal Co.**, 412 A.2d 466, 472 (Pa. 1979). "[It] must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." **Id.** Proof of malice, *i.e.*, an intent to injure is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. **Id.** Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damages result." **Baker v. Rangos**, 324 A.2d 498, 506 (Pa. Super. 1974) (citations omitted). However, a plaintiff need not aver specifically the time, place or date for a conspiratorial meeting or the precise date on which the conspiracy was entered. **Smith v. Wagner**, 588 A.2d 1308, 1312 (Pa. Super. 1991) (*citing* **Baker**, 324 A.2d at 507).

---

[3] WhiteSand does not claim that Steady State engaged in this conspiracy. See WhiteSand's Reply Brief, p.10 n. 1.

In Paragraphs 22 and 24 of the amended complaint, WhiteSand alleges that Stephanie and Patrick entered into a conspiracy "to steal [WhiteSand's] business by appropriating [WhiteSand's] commercial, intellectual and personal property and by using [WhiteSand's] resources to start up a competing businesses [sic]. . . . All of the acts . . . undertaken by [Patrick] were undertaken by him in furtherance of the conspiracy and were intended to benefit not just him but [Stephanie] as well." These allegations clearly evidence an agreement by Patrick and Stephanie to commit an unlawful act or act in an unlawful way. WhiteSand further alleged that Patrick and Stephanie's actions were based on an evil motive, meaning they acted with malice. Lastly, WhiteSand alleged that Patrick and Stephanie's actions significantly damaged WhiteSand's revenues and impacted the continuing viability of WhiteSand. These facts support the existence of a civil conspiracy between Patrick and Stephanie under the law. Consequently, because Patrick was part of this conspiracy as alleged by WhiteSand, WhiteSand claims that Patrick also engaged in the various torts averred in the amended complaint and may be liable therefore. In essence, because one member of the conspiracy, Stephanie, acted in a certain way, i.e., committed fraud, in furtherance of the conspiracy, a claim for that same tort, i.e., fraud, may be asserted against the non-acting member, Patrick.

In support of this theory, WhiteSand quotes the following from ***Church Mut. Insur. Co. v. Allied Adjustment Group***, 102 F.Supp.3d 719 (E.D. Pa. 2015), "a conspirator 'may be liable for overt acts committed in furtherance

of the conspiracy regardless of which co-conspirator committed the act.'" **Church Mut. Insur. Co.**, 102 F.Supp.3d at 732 (*quoting* **Commonwealth v. Yong**, 120 A.3d 299, 312 (Pa. Super. 2015)). Relying on this, WhiteSand argues that the amended complaint clearly states a cause of action for fraud, unjust enrichment, tortious interference with contractual relations between WhiteSand and its customers, and conversion against Patrick as his wife's co-conspirator.

Civil conspiracy, though typically not an independent cause of action, is a "mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act"; therefore, a plaintiff need not allege an underlying tortious claim against every co-conspirator. **See Tender Touch Rehab. Services, LLC v. Brighten at Bryn Mawr**, 26 F.Supp.3d 376, 405 (E.D. Pa. 2014). Thus, even though Patrick may not have engaged in some of the tortious conduct himself, because Stephanie did, and the actions were in furtherance of a conspiracy to defraud WhiteSand, WhiteSand can assert a cognizable claim for civil conspiracy to commit the underlying tort against Patrick. Although Stephanie is no longer a party, WhiteSand can still proceed with its claims against Patrick, provided it proves that Patrick conspired with Stephanie to commit the underlying tort. To succeed on these claims, WhiteSand must prove all elements of a conspiracy and all elements of the underlying tort; Patrick would be liable for committing the underlying tort under the theory of co-conspirator liability, even if Stephanie completed the tort.

With this in mind, we will examine each of the causes of action asserted against Patrick and Steady State.

**Fraud**

In its first issue on appeal, WhiteSand contends that the trial court erred in concluding that it failed to state a claim for fraud.

> To prove fraud, a plaintiff must demonstrate: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1014 (Pa. Super. 1999) (internal quotations and citations omitted).

> Within its amended complaint, WhiteSand alleged:
>
> 22. During her last 12 months of employment at [WhiteSand, Stephanie and Patrick] formed a conspiracy on their own behalf to steal [WhiteSand's] business by appropriating [WhiteSand's] commercial, intellectual[,] and personal property and by using [WhiteSand's] resources to start up a competing business[].
>
> 23. The approach which [Stephanie and Patrick] followed with respect to [WhiteSand] was on[e] which [Patrick] and Steady State had followed in stealing the business of [Patrick's] former employer.
>
> 24. All of the acts described in this complaint as being undertaken by [Patrick] were undertaken by him in furtherance of the conspiracy and were intended to benefit not just him but [Stephanie] as well.

25. [Stephanie] repeatedly told [David K. McMullin, Jr. (hereinafter "McMullin")[4]] during the 12 months preceding her resignation that she was not making sales because big investment banks were giving out free research so no one wanted to pay for it and further that there was no demand in the marketplace for the type of research produced by [WhiteSand].

26. [McMullin] believed what she said.

27. [Stephanie's] statements were false and fraudulent and designed to cover up and conceal the fact that she had been using [WhiteSand's] time and money to make sales on her own behalf and on behalf of others, representing to [WhiteSand's] customers that the products being sold were coming from [WhiteSand].

29. [WhiteSand] paid for [Stephanie's] airplane flights and other trip expenses to New York and other cities based on her representation to [McMullin] that such trips were for the purpose of marketing and selling [WhiteSand] research.

30. These representations were false since [Stephanie] used such trips not to market or sell for [WhiteSand], but for her own benefit and for the benefit of third party producers of investment reports.

* * *

67. [Stephanie's] statements . . . were material factual misrepresentations, made with the knowledge of their falsity, with the intention that [WhiteSand] would rely upon the same, and with the result that they did in fact justifiably rely on the same to their detriment[.]

* * *

69. [Stephanie's] statements and concealments were . . . made both on her own behalf and on behalf of her fellow conspirator, [Patrick,] who expected to benefit financially from the actions of his wife.

70. [Stephanie and Patrick's] conduct caused major financial damage to [WhiteSand].

_____

[4] McMullin "is the [m]anager of and an 87.5% interest owner in [WhiteSand]." WhiteSand's Amended Complaint, 4/10/17, at ¶ 3.

71. [Stephanie and Patrick's] conduct was the result of an evil motive. . . .

WhiteSand's Amended Complaint, 4/10/17, at ¶¶ 22-30 and 67-71.

From the above, it is clear that WhiteSand alleged: Stephanie and Patrick entered into an agreement "to steal [WhiteSand's] business by appropriating [WhiteSand's] commercial, intellectual[,] and personal property and by using [WhiteSand's] resources to start up a competing business;" pursuant to this agreement, Stephanie knowingly made materially false statements to McMullin, intending that McMullin and WhiteSand rely upon the representations; McMullin and WhiteSand justifiably relied upon the misrepresentations; and, WhiteSand suffered harm as a result of the fraud.

These allegations properly plead a claim against Patrick, based upon his liability as Stephanie's co-conspirator, as they allege all elements that are necessary to support a fraud claim against Stephanie and all elements that are necessary to establish Patrick's liability for the fraud as a co-conspirator. We therefore find that the trial court erred in sustaining the preliminary objection on the fraud claim.

**Tortious Interference with Contractual Relations**

In its second and third issues on appeal, WhiteSand contends that it set forth sufficient facts to state claims against Patrick for tortious interference with the NDA between Stephanie and WhiteSand, for interference with the

- 13 -

agreements between WhiteSand and its customers.[5]  Consequently, the trial court erred in dismissing these claims.  We agree.

To establish a claim for tortious interference with contractual relations, the following elements must be alleged:

> The existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> Purposeful action on behalf of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relationship from occurring;
>
> The absence of privilege or justification on the part of the defendant; and
>
> The occasioning of actual legal damage as a result of the defendant's conduct.

*Pelagatii v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987) *app. den.* 548 A.2d 256 (Pa. 1988).

First, we address WhiteSand's claim in relation to Stephanie's NDA (originally signed with Global, and now held by WhiteSand) in view of these elements.  WhiteSand averred that Stephanie had a valid NDA.  Patrick argued, however, that the NDA was not valid, on its face, for lack of

---

[5] The caption to Count VI indicates that the claim for Intentional Interference with Contractual Relations is to "All Defendants".  However, footnote 1 in WhiteSand's Reply Brief indicates that the allegations against Steady State are only for conversion and unjust enrichment.  Moreover, there are no facts asserted directly against Steady State that it interfered with WhiteSand's business relations; those facts are asserted only against Patrick in his individual capacity.

consideration; therefore, there is no existing contractual relationship as required under the first element. We disagree.

In order for Stephanie to become a member of Global she was required to sign the NDA, which provides in pertinent part:

> Potential Member is considering acquiring a membership interest in the Company . . . and it may become necessary or desirable for Company to disclose to Potential Member and for the Potential Member to disclose to Company and Managing Member certain information which the respective parties deem to be confidential.

In exchange for signing this NDA, in part, Stephanie became a member of Global. Thus, there was consideration for the NDA, and the first element is satisfied.

In Paragraphs 77 and 78 of the amended complaint, WhiteSand averred that Patrick "intentionally and purposely induced and encouraged [Stephanie] to breach her commitments under the NDA", thereby causing her to break the NDA. Although there are no facts to state how, or in what way, this was done, that is not necessary; WhiteSand does not need to plead its entire case. **See** 3 Standard Pa. Practice 2d §16:68 (1981). It is further alleged that this was done without privilege or justification. These allegations are sufficient to satisfy the second and third elements of the tort.

Lastly, as discussed above, WhiteSand set forth how Patrick's actions, along with Stephanie's, have damaged WhiteSand's business and worth. This meets the requirement of the fourth element.

Based upon these allegations, WhiteSand has established a direct cause of action for intentional interference with contractual relations against Patrick as to Stephanie's NDA.

Turning to WhiteSand's claim that Patrick interfered with WhiteSand's contractual relations with its customers, WhiteSand averred in Paragraph 92 that Patrick "intentionally and purposely interfered with existing business relationships and contracts" between WhiteSand and its investment research customers, causing them to stop doing business with WhiteSand and do business with Appellees. Further, in Paragraph 93, WhiteSand claims that Patrick "intentionally and purposely interfered with the prospective business relationship and contract between Plaintiff and its prospective clients for executive search undertakings." WhiteSand has alleged that existing contracts and relationships, as well as potential relationships, of WhiteSand, have been affected by Patrick's conduct. Thus, WhiteSand has sufficiently set forth the first and second elements of a claim for tortious interference.

Additionally, WhiteSand again alleges Patrick acted without justification or privilege, and as a result, WhiteSand's business and worth were damaged. Elements three and four of the cause of action for tortious interference are satisfied.

In this cause of action, WhiteSand alleges that Patrick is also liable based on the actions of his co-conspirator, Stephanie. In particular, WhiteSand alleges that Stephanie was making sales on her own behalf and on behalf of others while working for WhiteSand, and telling WhiteSand

customers that the products were coming from WhiteSand. In doing so, she used WhiteSand's resources, including WhiteSand's customer lists, trade secrets, proprietary sales techniques and other confidential information. Again, all being done in furtherance of the conspiracy between Stephanie and Patrick.

We conclude that WhiteSand has set forth both a direct claim against Patrick for intentional interference with the contractual relations between WhiteSand and its customers, and a claim for conspiracy to do so. Consistent with our analysis above regarding conspiracy, because WhiteSand has pled a viable claim for the underlying tort of intentional interference with contractual relations, WhiteSand also has pled a cognizable claim for conspiracy to commit tortious interference with contractual relations.

Therefore, the trial court erred in dismissing the claims against Patrick for intentional interference with contractual relations as to both the NDA and the contracts between WhiteSand and its customers.

**Unjust Enrichment**

WhiteSand's fourth appellate issue is that the trial court erred in dismissing the claims against Patrick and Steady State for unjust enrichment. Initially, we find that WhiteSand waived this claim on appeal, since it failed to allege how the trial court erred or how the Appellees were unjustly enriched. In its brief, WhiteSand merely recited the elements of an unjust enrichment claim and then quoted the allegations from its amended complaint. *See* WhiteSand's Brief at 13-14. WhiteSand has provided us with no argument as

- 17 -

to how the complaint sufficiently pleaded that Patrick and Steady State's "retention of [the] particular enrichment [would be] unjust." *See Meehan v. Cheltenham Twp.*, 189 A.2d 593, 596 (Pa. 1963). Therefore, we hold this claim is waived. *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

Even if this issue was not waived, we note that WhiteSand failed to set forth sufficient facts in the amended complaint to support this theory of liability. A claim for unjust enrichment sounds in equity. We previously have held that:

> [W]hen a person receives a benefit from another, and it would be unconscionable for the recipient to retain that benefit, the doctrine of unjust enrichment requires the recipient to make restitution. . . . This equitable doctrine imposes on the recipient an obligation in the nature of quasi contract.

*Myers-Macomber Engineers v. M.L.W. Constr. Corp.*, 414 A.2d 357, 360 (Pa. Super. 1979) (citations omitted).

Here, the amended complaint sets forth numerous allegations that the Appellees benefitted from the use of assets belonging to White Sand (e.g., Patrick used WhiteSand's computer, and other resources, for his benefit; Stephanie developed businesses by using WhiteSand's resources, assets and money; she benefitted from the training provided by WhiteSand and expensed her travel through WhiteSand to meet with clients for her business; she used

WhiteSand's customer list, trade secrets, proprietary sales techniques and other confidential information). From these allegations, it is apparent that Stephanie, Patrick, and Steady State were all enriched.

However, while the conferral of a benefit is a necessary condition of a valid unjust enrichment claim, it alone is not sufficient. "'The doctrine does not apply simply because the defendant may have benefit[t]ed as a result of the actions of the plaintiff.'" **Styer v. Hugo**, 619 A.2d 347, 350 (Pa. Super. 1993) *aff'd* 637 A.2d 276 (Pa. 1994) (*quoting* **D.A. Hill Co. v. Clevetrust Realty Investors**, 573 A.2d 1005, 1009 (Pa. 1990)). In order to avoid dismissal of the unjust enrichment claim, a plaintiff must allege, in its complaint, facts showing that it is unjust.

> The Restatement of Restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. The Restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fiancee B and then defaults in the payments. The Restatement states that C cannot recover the ring or its value from B.

**Meehan v. Cheltenham Twp.**, 189 A.2d 593, 596 (Pa. 1963). Thus, to recover under this theory, a defendant must have either requested benefits from a plaintiff or misled the plaintiff. **See D.A. Hill Co. supra**.

WhiteSand claims in Paragraphs 84 and 85 that the Appellees "unjustly enriched themselves" and that "unjust retention of money and property are

against fundamental principles of justice and good conscience and are patently unfair." Nothing in the amended complaint, however, sets forth that the Appellees requested these benefits from WhiteSand or misled WhiteSand.

Based on waiver and a failure to adequately set forth the elements of this cause of action in the amended complaint, we conclude that the trial court did not err when it dismissed the unjust enrichment claim against Steady State and Patrick.[6]

**Conversion**

In its fifth and final issue on appeal, WhiteSand contends that it set forth a cause of action for conversion against Patrick and Steady State, and the trial court erred in dismissing this claim. Pursuant to Pennsylvania case law, conversion is widely understood as "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." ***McKeeman v. Corestates Bank, N.A.***, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000) (*quoting* ***Stevenson v. Economy Bank of Ambridge***, 197 A.2d 721, 726 (Pa. 1964)). A person may incur liability for conversion by **"[u]nreasonably withholding**

---

[6] Additionally, we note that there can be no liability for unjust enrichment against Patrick as co-conspirator. "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law" – not in tort. ***Roethlein v. Portnoff Law Assocs., Ltd.***, 81 A.3d 816, 825 n.8 (Pa. 2013). Thus, since unjust enrichment does not sound in tort, there can be no conspirator liability for the claim of unjust enrichment.

**possession** from one who has the right to it." ***Martin v. National Sur. Corp***., 262 A.2d 672, 675 (Pa. 1970) (emphasis added).

In support of its position, WhiteSand generally alleges that "Defendants' actions have resulted in depriving WhiteSand of its rights in the physical, commercial and intellectual property used in WhiteSand's business without their consent and without lawful justification." In particular, WhiteSand relies on the same allegations set forth to establish its claim for unjust enrichment. In Paragraphs 34, 35, 47 and 55 of the amended complaint, WhiteSand avers that both Stephanie and Patrick used WhiteSand's computer for their benefit as well as for the benefit of Steady State. It is also alleged that Stephanie used WhiteSand's telephone and number.

As we will explain, these facts do not rise to the level necessary to establish conversion. First, although it is alleged that Patrick and Steady State used WhiteSand's computer, there is no allegation that the computer was unreasonably withheld from WhiteSand. Prior to Stephanie's resignation, there is no allegation that WhiteSand demanded return of the computer that was refused; a demand and refusal is an essential element to a claim for conversion. ***Norriton E. Realty Corp. v. Central-Penn Nat'l Bank***, 435 Pa. 57, 254 A.2d 637 (Pa. 1969). Without this, there can be no unreasonable withholding. ***Id.*** After Stephanie resigned, the computer was returned to WhiteSand within a short time. This Court has held that where property alleged to be converted was returned within three weeks, the property was

not unreasonably withheld. *See PTSI v. Haley*, 71 A.3d 304, 314-15 (Pa. Super. 2013).

Moreover, the Restatement (Second) of Torts section 222A comment c indicates:

> In conversion the measure of damages is the full value of the chattel, at the time and place of the tort. When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale. **Conversion is therefore properly limited, and has been limited by the courts, to those serious, major and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.**

Restatement (Second) of Torts § 222a, comment c (emphasis added). Comment d goes on to emphasize that not only are the consequences to be considered, but also the extent to which the owner has lost control over the chattel. Interference with the chattel must have been so serious to rise to the level of conversion. *Id.* at comment d. Today, computers and cell phones are commonplace. We, therefore, find that any interference with the computer, in and of itself, or the phone, did not rise to the level of conversion.

We also find that the law does not support a conversion claim for the use of Stephanie's time. In Paragraphs 32 and 33, WhiteSand claims that Stephanie was working for Steady State on WhiteSand's time. By definition, conversion claims only apply to chattels. A "chattel" is tangible property. However, time does not meet this definition, and we have found no authority to the contrary. Consequently, WhitesSand has failed to state a claim for

conversion of Stephanie's time. We will, therefore, affirm the trial court's order, in part, as to WhiteSand's conversion claim, as to the use of the phone, the computer and Stephanie's time.

We do find, however, that WhiteSand has pled a conversion claim against Patrick and Steady State with respect to WhiteSand's confidential business information. This claim, however, is dependent upon the specific type of information which WhiteSand claims was converted.

As to the type of property that may be the subject of conversion, it is clear in Pennsylvania that a cause of action for conversion may be maintained for almost all kinds of personal property, including money, notes, bonds, certificates of stock, title deeds." ***Mackay, et al., Administrators v. Benjamin Franklin R. & H. Co.,*** 135 A. 613, 614 (Pa. 1927). Courts in other states have expanded the type of property to which a conversion claim may apply to include intangible property. Federal courts within Pennsylvania have extended conversion claims specifically to confidential business information. ***See PNC Mortgage v. Superior Mortgage Corp.,*** 2012 WL 628000 (E.D. Pa. 2012) (allowed conversion claims for customer lists and other confidential information to proceed); ***The Bancorp Bank v. Isaacs***, 2010 WL 1141336 (E.D. Pa. 2010) (recognized a conversion claim of customer information as confidential business information improperly procured by raiding computers in contravention of Restatement of Torts § 759; other information such as business forms, website and customer lists were not subject to a conversion claim as they were not confidential).

Pennsylvania courts, however, have limited conversion claims only to intangible rights to property that are typically merged in or identified with a particular document. *See Northcraft v. Edward C. Michener Associates, Inc.*, 466 A.2d 620, 625 (Pa. Super. 1983) (holding that ideas for a prototype which had been reduced to sketches of same and actually existed, a conversion claim could be maintained). *See also Evans v. American Stores Co.*, 3 D. & C.2d 160, 162 (Phil. Co. 1955) (permitting an action for conversion of a sports promotion plan); *Benaquista v. Hardesty & Associates,* 20 D. & C.2d 227, 229 (Allegh. Co. 1959) (permitting a claim for conversion of architectural design). *But see Mackay,* 135 A. at 614 (not recognizing an action for conversion for an idea given in preparation for architect's plan).

In *PTSI*, a training company sued former employees for conversion, *inter alia*, of its customer list/worksheets which were in an Excel spreadsheet. Although the claim was dismissed on other grounds, we allowed a claim for conversion of this type of information to be filed. *PTSI,* 71 A.3d at 315.

Here, in Paragraph 34, WhiteSand claims that Patrick and Steady State used WhiteSand's resources. In Paragraphs 28 and 47, it is alleged that Patrick used WhiteSand's computer which contained WhiteSand's data and information for his benefit and that of Steady State. In Paragraph 88, WhiteSand alleged that "Defendants' actions have resulted in depriving WhiteSand of its rights in . . . the commercial and intellectual property used in the WhiteSand business. . . ." These allegations are directed to Patrick and Steady State. Additionally, and most significantly, are the allegations in

Paragraphs 50 and 51, that Patrick, along with Stephanie, erased much of the business information contained in WhiteSand's computer, and further, that they used special software on the computer to make normal recovery extremely difficult. Some of this information may ultimately be considered tangible and, therefore, properly the subject of a conversion claim. We, therefore, believe these allegations are sufficient to overcome the preliminary objection stage of the case, and may establish a claim for conversion against Patrick and Steady State.

Additionally, WhiteSand has pled a cognizable action for conspiracy to commit conversion, again, depending on the specific business information. As stated above, WhiteSand has set forth a claim for conversion against Patrick. In Paragraph 28 of the Complaint, WhiteSand alleges that Stephanie used all of the data and information on the computer. She also used WhiteSand's customer lists, trade secrets, proprietary sales and other confidential information. Stephanie did not return the confidential information and material that she had received over the years from WhiteSand and Global. WhiteSand alleged that this was done in furtherance of the conspiracy between Stephanie and Patrick. These allegations are sufficient to support a cause of action for which Patrick and Steady State may be liable for conversion under a theory of conspiracy, and thus, the trial court erred in dismissing this claim.

**Conclusion**

In sum, after careful review of the amended complaint, we affirm the trial court's order dismissing of WhiteSand's claim for unjust enrichment; however, we reverse the trial court's order and reinstate WhiteSand's claims for fraud, tortious interference with contractual relations, and conversion (in part, i.e., with respect to conversion of WhiteSand's business information) consistent with this memorandum.

Order affirmed in part and reversed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/7/2018